*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, STEWART, and HACKEL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Gunnar I. NAUGHTON**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202100285**

_____

Decided: 25 October 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Andrea C. Goode (arraignment)
Derek A. Poteet (trial)

Sentence adjudged 1 July 2021 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 14 months, forfeiture of all pay and allowances, and a bad-conduct discharge.[1]

For Appellant:
*Commander Michael E. Maffei, JAGC, USN*

_____

[1] Appellant was credited with having served 147 days of pretrial confinement.

For Appellee:
*Lieutenant Megan E. Martino, JAGC, USN*
*Lieutenant R. Blake Royall, JAGC, USN*
*Lieutenant John L. Flynn, JAGC, USN*

———————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————

PER CURIAM:

Appellant was convicted, in accordance with his pleas, of one specification of dereliction of duty, one specification of wrongful disposition of military property, one specification of larceny, and two specifications of obstruction of justice, in violation of Articles 92, 108, 121, and 131b, Uniform Code of Military Justice [UCMJ],[2] for stealing 840 rounds of 5.56mm ammunition, which was military property; being derelict in his duty by failing to safeguard ammunition; obstructing justice by removing evidence from the home of another Marine and asking a Sailor to delete incriminatory communications; and wrongful disposing of military property by throwing a large assortment of ammunition and explosives into a ravine in an effort to avoid detection by law enforcement.

In his sole assignment of error (AOE), Appellant argues that his trial defense counsel and civilian defense counsel were ineffective in failing to submit any matters in clemency for the Convening Authority to review, and in failing to pursue a "substantial assistance" recommendation from the trial counsel pursuant to Rule for Courts-Martial [R.C.M.] 1109(e)(2). We find no prejudicial error and affirm.

## I. BACKGROUND

While serving with 1st Reconnaissance Battalion, 1st Marine Division, Appellant served as an Arms, Ammunition, and Explosives [AA&E] Officer and was put in charge of a Field Ammunition Supply Point [FASP] for his unit's training at Range 110 on Camp Pendleton, California. As the AA&E Officer,

---

[2] 10 U.S.C. §§ 892, 908, 921, and 931b.

Appellant controlled and safeguarded the unit's ammunition, a duty that included collecting unused ammunition at the end of each training day and preserving it for future use. Between September and December of 2020, Appellant and several other servicemembers stole thousands of rounds of ammunition from the FASP, and Appellant falsified logbook entries to cover up the thefts.

In February 2021, Appellant learned that one of the other Marines involved in the thefts, Corporal [Cpl] Papa, had been arrested.[3] Appellant then removed several cans of stolen ammunition from another Marine's on-base house and hid them off base. He also instructed Petty Officer Golf, who was also involved in the thefts, to delete group chats on two separate messaging platforms that incriminated Cpl Papa, Appellant, and others. Finally, Appellant dumped thousands of rounds of ammunition and several explosives into a ravine in order to avoid detection by law enforcement.

At trial, Appellant pleaded guilty to larceny, obstruction of justice, dereliction of duty, and wrongful disposition of military property. As part of his plea agreement, Appellant agreed to "fully and truthfully cooperate in any proceeding, to include in-person interviews with appropriate law enforcement authorities and the trial and defense counsel" involved with any cases arising out of the same underlying conduct for which he was prosecuted.[4] Appellant understood that failure to cooperate on his part would constitute a material breach of his plea agreement. Following his guilty plea, Appellant met with law enforcement authorities pursuant to the plea agreement.

## II. Discussion

### A. Standard of Review and the Law

We review claims of ineffective assistance of counsel de novo.[5] To prevail on such a claim, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[6] An appellant bears the "burden of establishing the truth of factual matters

---

[3] All names in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms.

[4] App. Ex. VI at 11.

[5] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009); *United States v. Cooper*, 80 M.J. 664, 672 (N-M. Ct. Crim. App. 2020).

[6] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (other citation omitted).

relevant to the claim."[7] Only after an appellant has met his burden and has demonstrated both deficiency and prejudice can we find in the appellant's favor on an ineffective assistance of counsel claim.[8] Furthermore, "[i]t is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice."[9]

In the military, the Sixth Amendment right to effective assistance of counsel "extends to assistance in the preparation and submission of post-trial matters," since "[o]ne of the last best chances an appellant has is to argue for clemency by the convening authority."[10] However, "[j]udicial scrutiny of counsel's performance must be highly deferential," and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[11] To determine if the presumption of competence has been overcome, we use the following three-pronged test:

> (1) Are [the] appellant's allegations true; if so, is there a reasonable explanation for counsel's actions?

> (2) If the allegations are true, did defense counsel's level of advocacy fall measurably below the performance . . . [ordinarily expected] of fallible lawyers?

> (3) If a defense counsel was ineffective, is there a reasonable probability that, absent the errors, there would have been a different result?[12]

Appellant's sentence includes a punitive discharge and confinement for greater than six months, which limits the Convening Authority to disapprov-

---

[7] *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008).

[8] *Cooper*, 80 M.J. at 672.

[9] *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (citation omitted). *See also Strickland*, 466 U.S. at 697. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

[10] *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001) (internal quotation marks and citations omitted).

[11] *Strickland v. Washington*, 466 U.S. at 689 (1984).

[12] *Gilley*, 56 M.J. at 124 (internal quotation marks and citation omitted).

ing, commuting, or suspending the bad-conduct discharge only upon the recommendation of trial counsel.[13] This recommendation must be based upon substantial assistance provided in the prosecution of another person.[14] Accordingly, Appellant's claim of trial defense counsel and civilian defense counsel ineffectiveness is in two parts: first, in failing to pursue a recommendation (in the form of a "substantial assistance letter") from trial counsel; and second, in not using that recommendation to request clemency from the Convening Authority in the form of a suspended bad-conduct discharge.

## B. Counsel Were Not Deficient

Appellant has not established that his trial defense counsel and civilian defense counsel failed to pursue a substantial assistance letter from trial counsel. In his sworn declaration filed in response to Appellant's allegations, civilian defense counsel explained that he did, in fact, ask trial counsel about obtaining a substantial assistance letter. Trial counsel informed civilian defense counsel that he would discuss it with the senior trial counsel and regional trial counsel, but the letter was never written and no one from the Government indicated they would provide a letter. Civilian defense counsel did not pursue the matter further and the Convening Authority approved Appellant's sentence shortly thereafter.

Civilian defense counsel's declaration provides possible grounds for why the substantial assistance letter was never written. While Appellant engaged in two post-trial proffer sessions with law enforcement, he hesitated to disclose information about one of the other individuals who had received stolen ammunition from Appellant until that individual (Appellant's father-in-law) obtained legal representation. According to civilian defense counsel, "the special agents, prosecutor, senior trial counsel, and regional trial counsel, were angry after the first interview" because Appellant would not disclose the location of other missing explosives until legal representation had been secured for his father-in-law.[15] The regional trial counsel went so far as to email civilian defense counsel about Appellant possibly being non-compliant with his plea agreement.[16]

Given the circumstances of Appellant's lackluster assistance to law enforcement and the trial counsel's reaction, we find it reasonable that trial defense

---

[13] R.C.M. 1109(c)(1).

[14] R.C.M. 1109(e)(1).

[15] Aff. of civilian defense counsel at 4.

[16] *Id.*

counsel and civilian defense counsel did not further pursue a substantial assistance letter because they had no reason to believe trial defense counsel would provide one. Accordingly, we find Appellant has not overcome the strong presumption that trial defense counsel's and civilian defense counsel's advocacy fell within the wide range of reasonable professional assistance.

## C. Appellant Has Not Demonstrated Prejudice

Even if we were to find that his counsel were deficient for failing to submit any matters in clemency, Appellant has not demonstrated that he was prejudiced by this error.[17]

Appellant correctly asserts that the Convening Authority would only have been able to suspend or disapprove his bad-conduct discharge upon the recommendation of trial counsel. However, Appellant offers nothing more than speculation in his assertions that (1) trial counsel would have provided a substantial assistance letter if his counsel had further pursued one, and (2) the Convening Authority would have followed the recommendation and suspended Appellant's bad-conduct discharge. This sort of speculation is insufficient to demonstrate a reasonable probability that the outcome of Appellant's case would have been different but for his counsel's alleged error.[18]

Appellant's cooperation with law enforcement was required by his plea agreement; the benefit of his assistance was part of that agreement. Despite this, Appellant intentionally delayed fully cooperating in order to protect his father-in-law's legal interests. As stated, when asked for a letter, trial counsel knew of Appellant's poor assistance and made his displeasure known. Additionally, in negotiating with the Convening Authority for a plea agreement, Appellant agreed with the sentence limitation term that "[t]he minimum discharge to be adjudged for all offenses is a bad-conduct discharge."[19] Considering this fact in light of the maximum punishment for Appellant's offenses including a dishonorable discharge, we recognize that the Convening Authority likely had little inclination to suspend Appellant's punitive discharge, regardless of a recommendation by trial counsel. Given these circumstances, we do not find Appellant has demonstrated a reasonable probability that (1) trial counsel would have recommended a reduction in sentence, or (2) the Convening Authority, if given the opportunity, would have suspended Appellant's bad-

---

[17] *Green*, 68 M.J. at 361-62.

[18] *Id.* at 362 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.") (quoting *Strickland*, 466 U.S. at 698).

[19] App. Ex. VI at 7.

conduct discharge. Accordingly, we find Appellant has not established that he was prejudiced by counsels' alleged error, and that this AOE lacks merit.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[20]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[20] Articles 59 & 66, UCMJ.